IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 16, 2023 Session

## KIM COVARRUBIAS v. GERALD EDWARD BAKER

**Appeal from the Circuit Court for Knox County**
**No. 107966     Gregory S. McMillan, Judge**

_____

### No. E2023-00025-COA-R3-CV

_____

This appeal concerns a petition to modify alimony. Gerald Edward Baker ("Petitioner") filed a petition in the Circuit Court for Knox County ("the Trial Court") against his ex-wife Kim Covarrubias ("Respondent") seeking to modify his alimony obligation as a result of a massive post-retirement drop in his income. After a hearing, the Trial Court entered an order declining to modify Petitioner's alimony obligation despite having found that Petitioner was credible; that his decision to retire was objectively reasonable; and that a substantial and material change in circumstances had occurred. Petitioner appeals. We find, *inter alia*, that the Trial Court erred by failing to account for Petitioner's ability to pay in light of all of his expenses. The Trial Court's decision lacked a factual basis properly supported by evidence in the record; was not based on the most appropriate legal principles applicable to the decision; and was not within the range of acceptable alternative dispositions. Thus, the Trial Court abused its discretion. We reverse the judgment of the Trial Court and remand for the Trial Court to modify Petitioner's alimony obligation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Jennifer McKinnish Burton, Knoxville, Tennessee, for the appellant, Gerald Edward Baker.

Shelley S. Breeding, Knoxville, Tennessee, for the appellee, Kim Covarrubias.

# OPINION

## Background

Petitioner and Respondent divorced in 2007. In the parties' marital dissolution agreement, which was incorporated into the divorce decree, Petitioner agreed to pay Respondent 50% of his gross income as alimony "until either party is deceased." In 2015, Petitioner filed a petition to reduce alimony, which the Trial Court granted. We reversed the Trial Court on appeal. In *Covarrubias v. Baker*, No. E2016-02316-COA-R3-CV, 2017 WL 6276230 (Tenn. Ct. App. Dec. 11, 2017), we stated as relevant:

> Here, the trial court found that Husband's "loss of the Marital residence and his injury in 2008" constituted a substantial and material change in circumstances because it was unanticipated by the parties at the time of the divorce. However, the trial court made no factual findings that would show that Husband's injury in 2008 and the subsequent "loss" of the marital home substantially affected his ability to fulfill his alimony obligation. The court merely noted that Husband rents a home while Wife owns a home. There appears to be no testimony as to the nature of Husband's injury in 2008 and no testimony showing the level of financial hardship that resulted. Nor is there testimony explaining the circumstances surrounding the loss of Husband's home, whether through foreclosure or traditional sale.

> The trial court acknowledged in its oral ruling that Husband made "intimations" in his testimony about "a serious medical condition" he suffered in 2008, and this caused him to lose his home. However, Husband gave no further explanation. In *Harris v. Harris*, No. W2003-02112-COA-R3-CV, 2004 WL 2607541, at *4 (Tenn. Ct. App. Nov. 16, 2004) this court determined that the husband's diagnosis of cancer did not constitute a substantial change in circumstances because "the evidence did not indicate that the cancer or the resulting surgery affected Husband's monthly income. Indeed, the evidence indicates that Husband has slightly more income now than he did. . . ."

> We also find it significant that the trial court found that Husband's income increased from $120,000 per year in 2007, when the parties divorced, to $158,000 per year in 2015. Moreover, this fact was undisputed because Husband's 2015 W-2 statement, which was admitted into evidence, confirmed it. To be specific, the 2015 W-2 established that Husband's gross income for 2015 was $158,967.05. Conversely, and significantly, it is

undisputed that Wife's annual income of $41,000 per year remained the same.

Although the trial court found it "significant" that Wife financially supported the couple's adult daughter, adult son, and two grandchildren, the record reveals that she had been supporting them prior to the parties' divorce in 2007. Therefore, this circumstance cannot constitute a change that occurred after the divorce.

The fact that Wife owns a home while Husband had to sell his house and now rents a home fails, on its own, to support a finding that Husband no longer has the ability to pay alimony pursuant to the 2007 decree. Instead, and as this court reasoned in a factually similar case, "Husband's assertions that he struggles to pay his bills while Wife is able to maintain her standard of living shows only that Wife is better able to manage her funds." *Allen v. Allen*, No. W2007-02224-COA-R3-CV, 2008 WL 5169570, at *7 (Tenn. Ct. App. Dec. 10, 2008). Given the foregoing, we find no factual basis in the record that would support a finding that this change in circumstances was substantial.

Moreover, even if we were to find that the change in circumstances was substantial, the court's factual findings regarding the factors found in Tenn. Code Ann. § 36-5-121(i) do not support the court's decision to decrease Husband's alimony obligation.

\*\*\*

The only significant change in these factors since the divorce is that Husband's income has increased. Wife's income, however, has remained the same. We fail to see how this finding supports a decrease in Husband's alimony obligation.

Because there is no factual basis upon which to modify the 2007 alimony provision, we reverse the trial court's decision to decrease Husband's alimony obligation and remand with instructions to reinstate the alimony award as set forth in the final divorce decree.

*Covarrubias*, 2017 WL 6276230, at *5-6.

In July 2020, the Trial Court entered an order addressing certain outstanding motions in the case, stating as relevant:

-3-

This cause came to be heard before the Honorable Judge Gregory McMillan, on the 24th day of July, 2020, in the Fourth Circuit Court for Knox County, Tennessee upon Plaintiff's *Petition for Civil Contempt* and Defendant's *Motion for Slow Pay*. After review of the pleadings and the arguments of counsel for both parties, the Court is of the opinion that:

***

3. With respect to Defendant's ongoing alimony payments, Plaintiff is entitled to one-half of Defendant's pay. For so long as Defendant receives pay from Kasai North America, Inc. ("KNA") in the amount of One Hundred Sixty-Two Thousand Three Hundred Six Dollars ($162,306) per year, Plaintiff will accept that one-half (1/2) of his gross income every two weeks will be three thousand dollars ($3,000) and Defendant is to pay that amount to Plaintiff within twenty-four (24) hours of Defendant receiving his pay. Defendant shall pay such electronically by wire transfer or direct deposit to Plaintiff's account. Defendant mailed a check to Plaintiff on Friday, July 17, 2020. Defendant shall make his next payment electronically on July 31, 2020.

In October 2021, Petitioner initiated this litigation. In his latest petition to modify, Petitioner alleged that he was by then unemployed; that he received Social Security benefits; that there had been a substantial and material change in circumstances in that his hearing loss was severe and his severance package had ended; that "his income has decreased from over $160,000 per year to approximately $24,312 per year in social security benefits"; that he "is under current Order to pay to [Respondent] roughly $1013.00 per month in spousal support and $300 per month in attorney fees which leaves Petitioner with $713.00 per month to live on"; and that Respondent's need had greatly decreased since the July 2020 order.

In November 2022, the Trial Court heard Petitioner's alimony modification petition. Petitioner testified at the hearing, while Respondent did not. Petitioner testified that his current wife supports him. Petitioner stated, in part:

Q. Explain to the court why you retired at approximately 62. Explain to the court, did you know when you took that severance package that you were never going back to work, did you think you might work? Kind of walk us through your thought process when you retired a little bit early.
A. They came to me with an early retirement. They basically told me to take it or else I'd be going somewhere else, so I took that.

Q. So was it a forced retirement or was it --

A. The document will not read that, but the actual case, yes.

Q. What was your position at Kasai?

A. I was vice-president. They were cutting heads.

Q. Did that include sales? Did that include sales?

A. In sales?

Q. Was it sales that --

A. Logistics.

Q. Did you have to have a lot of one on one contact with others?

A. Yes, all around the world, and my hearing is bad and I hear things, don't hear things. I'll answer to things that probably aren't right and I was working with GM, Chrysler, Nissan, those type of -- making big decisions so not good.

Q. Tell me about your hearing issues. I know this has been an ongoing thing. Tell me about any changes, increase and decreases.

A. Very -- at times -- I mean it started in my 40s, maybe even before that. I was about 50 percent loss in my 40s, but it has really progressed. I'm 85 percent in one ear and 75 in the other.

***

Q. I just wanted to make sure I'm clear on that. And this Exhibit 1, that July Order, that July 2020 Order, in that Order it says, if we can go to paragraph -- is it still in front of you?

A. No, ma'am, I need one.

Q. Paragraph three, and it is in the exhibit, says for so long as you receive from Kasai North America in the amount of $162,306 per year, Plaintiff will accept half of the gross income every -- it will be $3,000, and it goes on to say that you'll pay within 24 hours and how you're going to pay.

In that Order, do you see anywhere what is going to happen after you're not working at Kasai?

A. I do not and I didn't -- I didn't think that whatsoever.

Q. Did that Order anticipate or address what was going to happen when your severance ended?

A. It did not.

Q. So you really were kind of left in the dark a little bit just with this Order in what to do when your severance ended.

A. Yes, ma'am.

Q. And when you entered this Order in July 2020, while you were retired, were you certain what you were going to be getting seven months later?

A. Say that again.

Q. Were you certain what you were going to be doing seven months later?
A. No, ma'am.
Q. And this Order doesn't say, once Kasai is over, you're going to switch to Social Security retirement benefits, or once this is over then we're going to switch to X amount and a specific dollar amount?
A. No, ma'am.

In December 2022, the Trial Court entered its final order. The Trial Court found Petitioner credible; that his retirement was objectively reasonable; and that a substantial and material change in circumstances had taken place. Even so, the Trial Court denied Petitioner's request for modification. The Trial Court stated, in relevant part:

1. The parties were divorced on October 22, 2007. Incorporated into their Final Decree of Divorce was the parties' Marital Dissolution Agreement (MDA). As provided in the parties' MDA, Husband was to pay, as alimony in futuro, ". . . 50% of his gross total income including, but not limited to bonuses and salary." This is not Defendant's first request for a modification. He sought a modification in 2015, which was granted by this Court. That modification was overturned by the Court of Appeals in an Order filed on December 11, 2017. Thus, Defendant must establish that there has been a substantial and material change of circumstances since the entry of that Order.

2. On October 25, 2021, Defendant requested a modification of his alimony obligation. Defendant sought a modification because in February 2020, he accepted a severance package from his former employer. The terms of Defendant's severance package paid him $3,000.00 per pay period until February 2021. In March 2021, Defendant began receiving Social Security benefits. Defendant's separation from his employment in 2020 was not voluntary. Defendant's employer told him that he could accept the severance package or be terminated. At the time Defendant began receiving Social Security payments in March 2021, he was sixty-two years old. At the time the present petition was heard, Defendant was sixty-four years old, and Plaintiff was sixty-six years old.

3. Defendant asserts that there have been substantial and material changes since the decision of the Court of Appeals (filed on December 11, 2017), which overturned this Court's July 2016 modification of Defendant's alimony in future obligation. More specifically, Defendant testified that his hearing loss is now "severe," his income has decreased, and Plaintiff has accumulated assets such that she no longer needs the level of support she was receiving.

Defendant testified that his hearing loss has worsened to the extent

that it was causing him difficulty in the workplace, causing him to mis-hear customers and/or members of his own company, and that those miscommunications caused him to make significant errors. Defendant's assertion that the numerical degree of impairment assigned to Defendant's hearing loss has increased since the last trial was impeached, but the Court finds him to be credible that, regardless of the numerical impairment, his hearing acuity has degraded and negatively affected his job performance.

There can be no doubt that Defendant's income of approximately $24,000 per year is greatly reduced from his income while working full-time prior to his being compelled to accept the severance package in 2020 and the $78,000 per year he was paid under the severance package. Plaintiff insists that this change is not a significant and material change in circumstances, that it cuts both ways. Plaintiff's fifty percent share of Defendant's income has substantially decreased because Defendant left full-time employment, had a year of severance pay, and is now receiving Social Security Benefits. The Court does not accept Plaintiff's argument in this regard, although it is a factor to consider in determining Defendant's ability to pay and Plaintiff's continued need in the event the Court determines that a modification of Defendant's alimony is supported.

Defendant asserts that Plaintiff has received nearly $100,000.00 by way of payments he has made recently. After these payments, Defendant has no savings account, has no retirement assets, and his only income is Social Security benefits which he earned through payments into the Social Security system. The testimony at the hearing did not make clear to the Court the exact purpose of those recent payments. From the record, it appears that there was a $75,000 payment and a $21,000 payment to repay arrearages, attorney fees, or to resolve allegations that Defendant was in contempt of court. To the extent that the funds paid represented unpaid alimony or reimbursement of attorney's fees, the Court rejects Defendant's premise that Plaintiff's "additional income" is a substantial and material change in circumstances.

4. Based upon the combination of factors established by the evidence — Defendant's hearing loss and its negative effect on his job performance; his age; the fact that he would have been terminated had he not accepted the severance package; and the fact that he has begun collecting Social Security benefits, the Court finds that Defendant's retirement is objectively reasonable, and it constitutes a substantial and material change of circumstances.

5. In determining whether the amount of alimony paid by Defendant should be modified, the Court considered Defendant's ability to pay and Plaintiff's need. As Plaintiff pointed out, Defendant's alimony obligation is

self-modifying. He is obligated to pay one-half of his gross income to Plaintiff. In October 2021, Defendant was receiving Social Security benefits of $24,312.00 per year. This annual figure equates to $2,026.00 per month. Defendant's financial affidavit indicates that his current income is $2,167.66 per month, making his payment to Plaintiff $1,083.83 per month.

Plaintiff's financial affidavit establishes that she currently has $330.35 more in income each month than she pays out in living expenses. Because Plaintiff was not called as a witness, the Court accepts as fact the figures contained on her financial affidavit that was sworn to by Plaintiff on November 17, 2022. In reviewing the deductions claimed for taxes against the amount of taxes owed in 2021, Plaintiff had a federal tax refund of $4,670.00, a Michigan state tax refund of $1,130.00, and a Pontiac City tax refund of $231.00. If those funds are added together and divided by twelve, they show that Plaintiff over-withheld taxes in the amount of $502.58 per month. Plaintiff's withholding in 2022 appears to be equivalent to that in 2021, from which the Court concludes that she is over-withholding to reduce her net income by as much as $500.00 per month based on the figures from 2021. She has as much as $830.35 per month available to her beyond her current need.

Defendant's financial affidavit was introduced into evidence as Exhibit 3. Defendant testified that the expenses were for the most part "estimates" of his expenses. He is unaware of the exact figure for the expenses because Defendant does not pay his own living expenses. Defendant receives his Social Security Benefits and writes two checks — the amount of his alimony obligation to Plaintiff goes to her; the remaining portion is paid to his current wife. Defendant's wife then pays the household bills using her income and the funds paid to her by Defendant.

Exhibit 5 is a copy of Defendant's household Verizon bill. It reflects that his current cellular phone charge is $56.40 per month. The household's cable service (provided by Dish Network) is $115.32 per month. Defendant attributes that bill one-half to him for a monthly expense of $59.50. The only other documentation of expenses provided by Defendant for his expenses was three bills for repairs done to the home in which he lives with his wife. Defendant averaged those bills over a year and arrived at an expense per month of $300.00 for improvements/repairs to the residence. The home was owned [by] Defendant's wife prior to their marriage and the Court does not recall hearing any proof that he has any ownership interest in it. While it is true that Defendant would have housing costs if he were single, the Court cannot permit him to claim the entirety of the expense for repairs and improvements and one-half of the mortgage under the facts established.

-8-

Defendant testified that his wife does the shopping and bill paying, that they do not keep receipts for groceries, and that he simply took a "per diem" figure for groceries purchased by Tennessee residents and included one-half of the expense for two people. Without Defendant being able to state that he affirmatively knows the cost of the bills and they are unique to him (or appropriately attributable in some proportion to him), the Court simply is not able to determine an accurate ability to pay for Defendant.

In an effort to do so, the Court has carefully reviewed the affidavit and believes that the following expenses have been adequately documented, that Defendant has sufficient personal knowledge of them, and they are directly related to him such that the Court can arrive at his actual need.

| | |
|---|---|
| Cable/internet | $59.50 |
| Cellular phone | $56.40 |
| Co-pay, prescriptions and | |
| Out-of-pocket medical expenses | $250.00 |
| Hairdress/barber | $25.00 |
| Clothing — self | $100.00 |
| | **$490.90** |

After paying Plaintiff one-half of his gross Social Security benefit, Defendant has the sum of $1,083.83 available to him to meet the living expenses he has documented above. It appears that Defendant has approximately $590.00 left over after the expenses above. The Court notes that, were several of the expenses claimed actually documented and appropriately proportioned between Defendant and his wife, this overage would almost certainly be a deficit. Plaintiff lists her own mortgage/housing expense at $841.00 per month. That home is shared with her adult daughter and grandchildren. If the cost of Defendant's housing expense was similar, he would be almost $250.00 per month short in meeting his monthly need, not including utilities, food, and other necessaries.

6. Despite, having found that there has been a material and substantial change in circumstances, the Court cannot find that there should be a modification of Defendant's alimony based upon his ability to pay and Plaintiff's need.

7. Both parties requested attorneys' fees as part of the relief they were seeking in this cause. Neither attorney provided the Court with an affidavit of fees and expenses at trial. The Court deems the matter waived. Each party shall bear his or her own attorney's fees.

(Record citations omitted). Petitioner timely appealed to this Court.

## Discussion

Although not stated exactly as such, Petitioner raises one issue on appeal: whether the Trial Court erred in declining to grant his petition to modify alimony. Respondent raises separate but largely overlapping issues.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon Cnty. Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). A trial court's decision on a petition to modify alimony is reviewed for abuse of discretion. *Wiser v. Wiser*, 339 S.W.3d 1, 11 (Tenn. Ct. App. 2010). In *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515 (Tenn. 2010), the Tennessee Supreme Court discussed the abuse of discretion standard at length, stating:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

> Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or

unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d [22,] 42 [(Tenn. 2005)].

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Beecher*, 312 S.W.3d at 524-25.

The alimony at issue is alimony *in futuro*, a form of long-term support. *See* Tenn. Code Ann. § 36-5-121(f)(1). This Court has articulated a petitioner's burden to modify alimony *in futuro* as follows:

Both parties agree that the MDA provided for alimony *in futuro*. An award of alimony *in futuro* "remain[s] in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A) (2017). The party seeking modification bears the burden of showing the requisite change in circumstances. [*Wiser v.*] *Wiser*, 339 S.W.3d [1,] 12 [(Tenn. Ct. App. 2010)]. A change is material if it occurred after the entry of the last alimony order and was unanticipated at the time of that order. *Jekot v. Jekot*, 362 S.W.3d 76, 83 (Tenn. Ct. App. 2011). A change is substantial if "it significantly

-11-

affects either the obligor's ability to pay or the obligee's need for support."
*Bogan v. Bogan*, 60 S.W.3d 721, 728 (Tenn. 2001).

Proving a substantial and material change is merely the first hurdle. *See id*. at 730; *Wiser*, 339 S.W.3d at 14. The party requesting modification must also show that modification is warranted. *Bogan*, 60 S.W.3d at 730; *Wiser*, 339 S.W.3d at 14. In this second step of the modification analysis, our courts are guided by the statutory factors in Tennessee Code Annotated § 36-5-121(i), to the extent relevant. *Bogan*, 60 S.W.3d at 730; *Wiser*, 339 S.W.3d at 14-15. The two most important factors are need and ability to pay. *Bogan*, 60 S.W.3d at 730. Notably, in a modification proceeding, the recipient's need is not the court's primary concern. *Id.* "[T]he ability of the obligor to provide support must be given at least equal consideration." *Id.*

*Himes v. Himes*, No. M2019-01344-COA-R3-CV, 2021 WL 1546961, at *4 (Tenn. Ct. App. Apr. 20, 2021), *no appl. perm. appeal filed*.

One point of contention in this matter is whether Respondent's sharing of her home with an adult daughter should have been considered by the Trial Court for purposes of Petitioner's modification request. Tenn. Code Ann. § 36-5-121(f)(2)(B) provides:

(B) In all cases where a person is receiving alimony in futuro and the alimony recipient lives with a third person, a rebuttable presumption is raised that:
(i) The third person is contributing to the support of the alimony recipient and the alimony recipient does not need the amount of support previously awarded, and the court should suspend all or part of the alimony obligation of the former spouse; or
(ii) The third person is receiving support from the alimony recipient and the alimony recipient does not need the amount of alimony previously awarded and the court should suspend all or part of the alimony obligation of the former spouse.

Tenn. Code Ann. § 36-5-121(f)(2)(B) (West eff. April 25, 2011 to March 30, 2022).

Regarding the consequences of an obligor's objectively reasonable retirement, another component of this matter, our Supreme Court has stated: "[W]hen an obligor's retirement is objectively reasonable, it does constitute a substantial and material change in circumstances—irrespective of whether the retirement was foreseeable or voluntary—so as to permit modification of the support obligation." *Bogan*, 60 S.W.3d at 729 (footnote omitted). An objectively reasonable retirement does not guarantee the reduction or termination of alimony, but it allows an obligor to show that a reduction or termination is

-12-

appropriate in light of the factors found at Tenn. Code Ann. § 36-5-121(i). *Id*. at 730 (citing the previous statute containing the relevant factors).

Petitioner argues that it was illogical for the Trial Court to deny his petition to modify his alimony obligation when Respondent has an overage of $830.35 per month; that the Trial Court's failure to modify his alimony obligation when he is retired and receiving only Social Security benefits was an injustice to him; and that Respondent failed to rebut the presumption that her sharing her home with an adult daughter decreases her need for support.

For her part, Respondent argues that the Trial Court erred in finding a substantial and material change in circumstances. Respondent also asserts that the Trial Court should have used 2020 as a baseline for a substantial and material change rather than 2017. According to Respondent, there has been no unexpected change in Petitioner's circumstances. Going further, she argues that even if a substantial and material change in circumstances had occurred, the Trial Court's decision should stand because Petitioner's expenses do not exceed his income. She notes that Petitioner's alimony obligation decreased automatically following his retirement. Continuing her argument, Respondent says that this Court already has ruled that Respondent's support for her adult children was not a change occurring after the divorce, and that this arrangement already has been taken into account. Respondent also contends that the Trial Court erred in admitting over her objection Petitioner's home repair and cell phone expense documentation, stating there was no testimony that these were true and accurate copies of what they purported to be.[1]

---

[1] The following exchanges took place at the hearing:

> MS. BREEDING: Okay, your Honor, I just object that it's hearsay and the receipts, they're not even in his name. They're all in his wife's name. They are not even his receipts. All of them are the bills to Susan Baker.
> THE COURT: Ms. Burton?
> MS. BURTON: Your Honor, they substantiate -- they were requested in discovery. They substantiate what was talked about and they've been previously provided. He's testified as to how they come about. I would say for identification purposes they can be admitted.
> THE COURT: Well, I.D. absolutely. The question is, should they come in as substantive evidence, and I think that a foundation has been laid, from his personal knowledge, as to the work that was required and to the incurrence of services. And any question that the Court has would go to the weight of the evidence given the dollar amount rather than its admissibility. I will let them in. Exhibit 4.
>
> ***
>
> MS. BURTON: I'd like to have this marked as Exhibit 5 from Verizon as a business record.
> MS. BREEDING: Your Honor, there's still an objection. There's no affidavit of custodian for a business record to show that these are the true and exact copies and that they were

Respondent requests her attorney's fees and costs incurred in defending Petitioner's modification petition.

Regarding the appropriate baseline for assessing a substantial and material change, the last adjudication of an alimony modification petition in this matter prior to the present litigation occurred in 2017. The Trial Court's 2020 order addressed motions for civil contempt and slow-pay. It was not a decision on alimony modification. Therefore, the Trial Court correctly used 2017 as a baseline.

However, even if 2020 were used as a baseline, Petitioner testified below that he did not know what his future plans were at that time. As it happened, Petitioner retired and his income went from roughly $160,000 per year to around $24,000 per year in Social Security benefits. While Petitioner's alimony obligation decreased automatically alongside his reduction in income, the automatic nature of the alimony does not render it immune to further modification. As a matter of common sense, 50% of $160,000 is significantly different than 50% of $24,000. The Trial Court found that Petitioner's retirement was objectively reasonable given his age, health, and the circumstances surrounding his having to take a severance package. The evidence supports that finding. The Trial Court also credited Petitioner's testimony with respect to his hearing loss, a determination we do not disturb. Petitioner's objectively reasonable retirement, accompanied as it was by an enormous drop in his income, constituted a substantial and material change in circumstances since the last ruling on modification.

While the Trial Court found a substantial and material change, it nevertheless declined to modify Petitioner's alimony obligation. In so doing, the Trial Court heavily scrutinized Petitioner's expenses. It did not account at all for Petitioner's food expenses. This constituted error, as Petitioner has to eat. While the Trial Court rejected Petitioner's claimed per diem expenses, arriving at zero dollars for food was unreasonable. Respondent asserts that many of Petitioner's claimed expenses were mere estimates, but she fails to explain why an estimate need necessarily be rejected out of hand. For example, future medical expenses are always an estimate even though past medical expenses are known. In addition, the Trial Court concluded that Petitioner has some $590.00 per month left over after alimony but that if his housing expenses were similar to Respondent's he would run

---

kept in the regular course of the business, and again, the bills are actually his wife's bills.

MS. BURTON: But it has his name on there, your Honor, to justify that he has an approximate bill, it appears that $76 is his.

THE COURT: 76?

MS. BURTON: His portion of the bill would be -- I'm sorry, $83.85. I don't have my readers on.

MS. BREEDING: It's still hearsay.

THE COURT: I will allow it.

-14-

a shortfall of $250.00 per month even without including any amount for food. On the other hand, the Trial Court accepted Respondent's affidavit of expenses at face value. This is concerning because Petitioner testified to his expenses while Respondent did not, although both parties submitted affidavits of expenses. In effect, Petitioner was penalized for testifying. The Trial Court did not adequately consider Petitioner's expenses and left him to carry on paying half of his relatively meager Social Security benefits to Respondent as though nothing had changed in the matter even after correctly finding a substantial and material change in circumstances. Respectfully, that is an illogical result, and one not supported by the evidence, not based on the most appropriate legal principles, and not within the range of acceptable alternative dispositions.

A trial court's decision on a petition to modify alimony is entitled to deference. We may not second-guess or tweak a trial court's discretionary decision just because we might have ruled differently. Here, however, the Trial Court failed to apply the most appropriate legal principles applicable to the decision at hand. In particular, it did not heed that the "'ability of the obligor to provide support must be given at least equal consideration.'" *Himes*, 2021 WL 1546961, at *4 (quoting *Bogan*, 60 S.W.3d at 730). In addition, the factual basis for the Trial Court's decision is not properly supported by the evidence in the record. Indeed, the Trial Court's own findings tend to undermine its ultimate decision to deny Petitioner's modification request. Petitioner is retired now and the sole source of his income is around $2,100 per month in Social Security benefits. Despite this, the Trial Court's decision leaves Petitioner in the position of paying half of his meager Social Security income to Respondent even though he would run a deficit if his expenses were even minimally accounted for. Likewise, the Trial Court placed inordinate focus on the support Petitioner receives from his current wife, all the while not applying that degree of emphasis on the fact that Respondent shares her home with an adult daughter.[2]

In the earlier *Covarrubias v. Baker* appeal, we found among other things that there was "no factual basis upon which to modify the 2007 alimony provision. . . ." 2017 WL 6276230, at *6. Respondent refers to Petitioner's latest request to modify alimony as "serial" in nature. However, the facts of the current appeal are different in key ways. Petitioner is retired now and draws around $24,000 per year in Social Security benefits, a stark departure from his income during his working days. The Trial Court did not fully reckon with Petitioner's expenses or his ability to pay. It instead placed undue emphasis on the fact that Petitioner's wife supports him—support which, in theory at least, could be withdrawn at any time. In contrast, the Trial Court accepted Respondent's expenses at face value. The Trial Court's decision ignores the impact of Petitioner's huge drop in income and even a minimal measure of his expenses on his ability to pay Respondent 50% of his

---

[2] While we note the contrast in the Trial Court's treatment of the parties' respective living arrangements, we agree with Respondent that the fact she shares her home with an adult daughter already has been taken into account in this case.

income as he did pre-retirement.  It also gives no consideration to the Trial Court's findings that Respondent "has as much as $830.35 per month available to her beyond her current need."  In that regard, the Trial Court's decision caused an injustice to Petitioner and does not fall within the range of acceptable alternative dispositions.  We therefore find that the Trial Court abused its discretion in denying Petitioner's modification petition.[3]  We reverse the judgment of the Trial Court and remand for the Trial Court to modify Petitioner's alimony obligation.

As a final matter, Respondent requests her attorney's fees and costs incurred in defending Petitioner's modification petition.  Since we reverse the Trial Court and rule in Petitioner's favor, we respectfully decline to award Respondent any attorney's fees or costs.

## **Conclusion**

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and collection of the costs below.  The costs on appeal are assessed against the Appellee, Kim Covarrubias.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

---

[3] The term "abused its discretion" has a specific meaning as set out in this Opinion in this legal setting.  It does not have the meaning that is likely called to mind by a non-lawyer in a non-legal setting.